## BOUND

### v.

### BISCOTTI.

Lakewood Municipal Court, Ohio.

No. 93 CVH 2459.

Decided Dec. 29, 1995.

*Kevin Spellacy,* for plaintiff James P. Bound.

*Michael Murman,* Law Director, and *Roger Tibbetts,* Assistant Law Director, for defendant.

---

PATRICK CARROLL, Judge.

The issue in this case is the authority of a trial court to seal an arrest record of one who was never prosecuted. The material facts in this case are not in dispute.

In July 1971, the plaintiff, then age nineteen, was stopped along with others in a car by the Lakewood police. After the plaintiff and the other occupants got out of the car, a marijuana pipe was found in the car. All of the occupants of the vehicle were arrested and taken to jail.

The plaintiff spent one night in jail. After being questioned about the pipe by the police, the plaintiff was released from jail. No criminal charges were ever filed against the plaintiff in any court arising out of this incident.

Over twenty-four years later, a record of this incident and the arrest of the plaintiff is still being maintained and disseminated. The plaintiff commenced this action to seal this arrest record. The Lakewood Chief of Police, as a custodian of the plaintiff's arrest record, was named in this case as the defendant.

The Chief of Police, through the Lakewood Law Department, filed an answer in response to the plaintiff's complaint. The defendant did not deny any of the factual allegations contained in the plaintiff's complaint. The defendant did assert affirmative defenses of lack of jurisdiction, including subject matter

jurisdiction. The defendant also asserted that the arrest record was a public record pursuant to R.C. 149.43 and, therefore, not subject to expungement or sealing.

An evidentiary hearing was held in this case. The plaintiff appeared at the hearing with counsel. The law department was present without the defendant. The record shows that notice of the hearing was given to both sides, but that the city decided that the law department, without the Chief of Police, would appear.

At that hearing the plaintiff testified to the facts of the arrest. The plaintiff also testified that he had received no other criminal convictions other than traffic matters since the time of his arrest in this case. Nor were any other criminal charges pending.

The plaintiff testified that he is currently living outside the state of Ohio. According to his testimony, the plaintiff is employed as a software engineer. The plaintiff testified that he is a member of a gun club and recently applied for a small arms permit. The permit request was denied on the basis of past "criminal activity for drugs," when a record check revealed the 1971 arrest.

The city submitted no evidence to either challenge the testimony of the plaintiff or support its affirmative defenses. While the city asserted that the affirmative defenses were legal, rather than factual in nature, the city declined the court's request to submit a brief in support of its position.

I. *Authority of the Court to Seal Records*

The initial inquiry concerns the court's authority to seal an arrest record in which a formal criminal charge was never filed in any court. The issue of a court's authority to seal a criminal record was addressed by the court in *State v. Stadler* (1983), 14 Ohio App.3d 10, 14 OBR 13, 469 N.E.2d 911.

"In Ohio, the authority for the return, sealing or expungement of a criminal record exists in three ways: two are statutory (R.C. 109.60 and R.C. 2953.31 *et seq.*) and one is judicial (*Pepper Pike v. Doe* [1981], 66 Ohio St.2d 374 [20 O.O3d 334, 421 N.E.2d 1303]). It must be noted at the outset that the maintenance of criminal records is generally predicated upon a compelling state interest in such records." *Id.* at 10, 14 OBR at 13, 469 N.E.2d at 912.

Neither of the statutory remedies indicated by the court in *Stadler* is applicable to the present case. R.C. 109.60 is limited to the return of fingerprints and identification of the defendant. This statute is also limited to persons found not guilty or to cases dismissed and, as such, is not applicable to the present case in which criminal charges were never filed. Moreover, the relief sought by the plaintiff in this case goes beyond that provided by R.C. 109.60.

Similarly, R.C. 2953.52(A)(1) refers to sealing of a record for a person "who is found not guilty of an offense by a jury or a court or who is the defendant named in a dismissed complaint, indictment or information." A review of this statute shows that it is limited to those cases in which a criminal complaint was filed with the court. In the present case, no complaint was ever filed with the court; therefore, the provisions of this statute are not applicable. The second part of this statute, R.C. 2953.52(A)(2), refers to a no-bill by the grand jury. Again, the prosecutor did not submit the case to the grand jury and, therefore, this second provision is also not applicable to this case.

Notwithstanding the lack of express statutory authority, the court in *Stadler, supra,* and others have recognized the inherent power of a court to order the sealing of an arrest record. *State v. Weber* (1984), 19 Ohio App.3d 214, 216, 19 OBR 359, 360–361, 484 N.E.2d 207, 209; see, also, *State v. Netter* (1989), 64 Ohio App.3d 322, 323, 581 N.E.2d 597, 597–598 (court's authority to seal record may be either statutory or judicial).

The municipal court's judicial authority to seal a criminal record, without express statutory authority, was initially recognized by the court in *Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 20 O.O.3d 334, 421 N.E.2d 1303. In *Pepper Pike,* the municipal court denied the request to seal records on the grounds that the municipal court lacked statutory authority to do so. In reversing this decision, the Ohio Supreme Court adopted the law of other jurisdictions that recognized the municipal court's power to grant this judicial remedy. 66 Ohio St.2d at 377, 20 O.O.3d at 336, 421 N.E.2d at 1306.

In *Pepper Pike,* criminal charges of assault were filed in the municipal court, but later dismissed. At the time *Pepper Pike* was decided by the Supreme Court, statutory expungement was limited only to persons who had been convicted of a criminal offense. After the Supreme Court's decision, R.C. 2953.51 *et seq.* was enacted to provide for the sealing of a record in which the defendant was acquitted or charges were dismissed. As the court noted in *State v. Winkelman* (1981), 2 Ohio App.3d 465, 468, 2 OBR 561, 565, 442 N.E.2d 811, 815–816, the decision in *Pepper Pike* was directed towards the inequity that results from the availability of statutory expungement for convicted first offenders, but not for those who were not convicted. See, also, *State ex rel. Lewis v. Lawrence Cty.* (1994), 95 Ohio App.3d 565, 642 N.E.2d 1166, fn. 2.

A similar inequity would exist to deny the court's ability to seal a record for one against whom a criminal complaint was raised, but never filed in court. The authority for the court to proceed on an extrastatutory basis derives from a concern for the preservation of the privacy interest of the individual. *State v. Weber, supra,* 19 Ohio App.3d at 216, 19 OBR at 360–361, 484 N.E.2d at 209. Such an interest applies equally to those against whom criminal charges were

raised, but not filed. Moreover, other jurisdictions have also recognized the inherent power of the court to order the sealing of an arrest record. *Livingston v. United States Dept. of Justice* (C.A.D.C.1985), 759 F.2d 74. See, generally, Annotation (1972), 46 A.L.R.3d 900.

The rationale which was the basis of the Supreme Court's decision in *Pepper Pike, supra,* applies equally to this case. In recognizing the inequity between different classes of persons in the criminal justice system, the inherent authority of the court may be cautiously exercised in those cases in which the statutory authority is silent. The use of the court's inherent authority in this case is merely an extension of the same principle in *Pepper Pike, supra,* that is, to provide relief to a class of persons that was omitted by the statute. The same considerations of privacy, due process, and the presumption of innocence apply to those persons whose criminal charges have been dismissed and to those persons who have been arrested, but never charged.

 It is important to note, however, that the exercise of the court's authority is limited to those situations not addressed by the statutory scheme for expungement. As such, the court's inherent authority is not available to situations in conflict with statutory provisions for expungement. See *Bowling Green v. Logan* (M.C.1987), 40 Ohio Misc.2d 15, 532 N.E.2d 220. See, also, *State ex rel. Lewis v. Lawrence, supra.*

In the present case there is no statutory prohibition against expunging a criminal record of a person arrested, but never charged with a criminal offense. Therefore, the relief sought by the plaintiff is not in conflict with the provisions of R.C. Chapter 2953. Thus, as in *Pepper Pike, supra,* in the absence of any statutory provisions, relief may be afforded through the exercise of the court's inherent authority.

Although the defendant has objected to the court's exercise of its inherent authority, the defendant does not challenge the reasoning set out by the Supreme Court in *Pepper Pike, supra,* upon which this court's authority is based. Nor has the defendant presented any legitimate government interest or rational basis that would justify the defendant's position that an arrest record for a person acquitted or even convicted of a crime could be sealed, but the same record for a person who was never charged with a crime may not be sealed.

 The defendant asserted that this court lacked jurisdiction on the grounds that the sealing of a criminal record is equitable in nature and, therefore, not available in a municipal court. While as a general rule a municipal court is not a court of equity, there are specific situations when a municipal court may grant equitable relief. *Behrle v. Beam* (1983), 6 Ohio St.3d 41, 6 OBR 61, 451 N.E.2d 237; *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 53–54, 2 OBR 57, 59–

61, 440 N.E.2d 590, 595. Thus, the mere fact that the relief sought is equitable in nature does not, by itself, deprive the court of jurisdiction.

In the present case, both the express statutory language of R.C. Chapter 2953 and the Supreme Court's opinion in *Pepper Pike, supra,* permit the sealing of a criminal record by a municipal court. Specifically, the Supreme Court's decision in *Pepper Pike,* holding that a municipal court has the inherent authority to seal a criminal record, must necessarily be premised upon valid subject matter jurisdiction of the municipal court in the exercise of that authority.

With respect to the ability of this court to provide a valid remedy, R.C. 1901.13(A)(1) gives a municipal court the authority to exercise powers that are necessary to give effect to the jurisdiction of the court and to enforce its judgments, orders, or decrees. R.C. 1901.13(B) also provides:

"Whenever an action or proceeding is properly brought in a municipal court within Cuyahoga county, the court has jurisdiction to determine, preserve, and enforce all rights involved in the action or proceeding, and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties."

Based upon the foregoing and the rationale expressed by *Pepper Pike, supra,* and its progeny, the court finds that it has the requisite authority and jurisdiction to order the sealing of the plaintiff's arrest record. Upon the exercise of the court's jurisdiction, R.C. 1901.13(A)(1) and (B) provide authority for the court to order an effective remedy.

## II. *Consideration of Interests and Objections*

Having determined that this court is authorized to grant relief in this case, the next issue is the standard to be applied. Again, the Supreme Court's opinion in *Pepper Pike* sets out the factors to be considered. To begin with, while the Supreme Court recognized a court's inherent power to seal a criminal record in the absence of any statutory authority, the court limited the use of this authority to "unusual and exceptional circumstances." 66 Ohio St.2d at 376, 20 O.O.3d at 335, 421 N.E.2d at 1306. The court in *Pepper Pike* noted that the recognition of a court's inherent authority should not be construed as automatic for every defendant acquitted of criminal charges. *Id.* at 377, 20 O.O.3d at 336, 421 N.E.2d at 1306. The exercise of the court's inherent authority should be done on a case-by-case basis.

In order to determine when the remedy is appropriate, the court in *Pepper Pike* stated:

"The trial court should use a balancing test, which weighs the interest of the accused in his good name and right to be free from unwarranted punishment

against the legitimate need of government to maintain records." *Id.* at 377, 20 O.O.3d at 336, 421 N.E.2d at 1306. Accord *State v. Stadler, supra,* 14 Ohio App.3d at 11, 14 OBR at 14, 469 N.E.2d at 913 (petitioner's right to privacy weighed against government's interest to maintain record of criminal proceedings).

In balancing the competing interests, the Supreme Court stated in *Pepper Pike* that the public interest in retaining records of criminal proceedings and making them available for legitimate purposes typically outweighs any privacy interest of the individual. 66 Ohio St.2d at 377, 20 O.O.3d at 336, 421 N.E.2d at 1306. Since that case, however, the Supreme Court has shifted the weight in favor of the individual. Thus, in *State v. Bissantz* (1988), 40 Ohio St.3d 112, 532 N.E.2d 126, the court stated that with the 1984 amendment of the expungement statute, greater emphasis is placed on the individual's interest to have the record sealed. *Id.* at 114, 532 N.E.2d at 128–129; see, also, *State v. Greene* (1991), 61 Ohio St.3d 137, 140, 573 N.E.2d 110, 112 (Moyer, C.J., concurring in part and dissenting in part).

■ Governmental interests to be considered include promotion of effective law enforcement, the public interest in promoting general safety and welfare of the community, continuing investigation of a specific crime and investigation of future criminal activity. The public's need to know is also a relevant, legitimate governmental need which must be considered. *State v. Greene, supra,* 61 Ohio St.3d at 141, 573 N.E.2d at 113 (Moyer, C.J., concurring in part and dissenting in part). See, also, *State v. Grove* (1986), 29 Ohio App.3d 318, 320, 29 OBR 418, 420, 505 N.E.2d 297, 299.

■ In the present case, the plaintiff was arrested on a misdemeanor drug charge. The maximum period of time to commence a criminal prosecution is two years. R.C. 2901.13(A)(2). The statute of limitations has long expired in this case and, therefore, any criminal charge arising out of this incident would be time-barred.

The city has not indicated that there is any type of ongoing criminal investigation of the plaintiff. Nor have there been any allegations of similar, subsequent incidents. After the passage of twenty-four years, there is little if any investigative value to the records. Thus, there does not appear to be any compelling reason for the government to retain possession of these records.

Although the government has opposed the sealing of the record in this case, no evidence has been presented to support this objection. A general statement by the government, unsupported by any evidence, of the need to retain and disseminate information in old criminal records is not enough to prevent the sealing of the record when balanced against the interest of the person charged.

Thus, while the government's interest must be recognized and considered, it will not be assumed.

On the other hand, it cannot be disputed that the plaintiff has a right to privacy. In balancing the issues for sealing the record in *Pepper Pike, supra,* the Supreme Court noted that the plaintiff in that case was a school teacher. Thus, the public aspect of the plaintiff's employment is a factor to be considered. See, also, *State ex. rel. Thompson Newspapers v. Martin* (1989), 47 Ohio St.3d 28, 546 N.E.2d 939 (upholding court's authority to seal criminal records involving a public official even though the records were public in nature). In arriving at its conclusion, the court relied upon the potential adverse publicity to which the records would subject a person when no formal charges had been brought. 47 Ohio St.3d at 30, 546 N.E.2d at 941–942.

Another consideration is the fact that no formal criminal charges had ever been brought against the plaintiff. One of the fundamental touchstones of our society is the presumption of innocence that is afforded to a criminal defendant. In the event criminal charges had been filed with any court, there would have been a public examination of the evidence and either a conviction or an acquittal. Even if the charges had been filed and later dismissed, they could only be dismissed by leave of court and in open court. Crim.R. 48(A). Therefore, there would be a public explanation of the charges. When no formal charges are ever filed, however, the plaintiff in an expungement action is left to defend his name against innuendos and assertions, the validity of which cannot be determined in a court. Therefore, the plaintiff is subject to charges in which there is no effective forum available to defend.

The decision to file criminal charges with a court is left to the discretion of the prosecutor and police. The mere fact that charges were not filed in this case does not call into question the validity of the arrest or the charge. Nor does it call into question the conduct of the police. There has been no issue regarding any impropriety by the police. There may be a number of valid reasons why the police or prosecutor would decline to prosecute after an arrest. The reason for the lack of prosecution or the validity of the charges may be legitimate issues to be considered, if raised by the parties. These issues were not raised in this case. Rather, the issue in this case is the present consequences of arrest when no charges were even filed.

Concurrent with the right to privacy is an individuals' interest in his own good name. An arrest may be made upon a mere suspicion of criminal activity. The long-term effect of the arrest, regardless of its validity, may be severe and subject a person to serious difficulties. The mere fact of an arrest may restrict or foreclose a person's opportunities for school, employment or professional

license. It may also create a risk of becoming an unjustified focus of future criminal activity.

In balancing the interest of the parties, the defendant raised by way of objection the issue of public records. There can be no serious dispute that the public's right of access to records is a legitimate governmental interest. As was stated earlier, however, the city merely raised this issue in its answer to the complaint without presenting any evidence at the hearing or explanation of its position by legal memorandum.

To begin with, it is unsure whether the records at issue are "public records" within the statutory definition of R.C. 149.43. The right of access to governmental records is restricted by R.C. 149.43(A). Construing this section, the court of appeals noted in *State ex rel. Sweeney v. Parma Hts.* (1994), 93 Ohio App.3d 349, 638 N.E.2d 614.

"R.C. 149.43(A)(2)(a) exempts from release '[t]he identity of a suspect who has not been charged with the offense to which the record pertains * * *.' Records which contain the names of suspects in a criminal investigation who were neither charged with nor arrested for an offense are thus specifically exempted from release under R.C. 149.43(A)(2)(a). *State ex rel. Moreland v. Dayton* (1993), 67 Ohio St.3d 129, 130, 616 N.E.2d 234, 235–236; see *State ex rel. Outlet Communications, Inc. v. Lancaster Police Dept.* (1988), 38 Ohio St.3d 324, 328, 528 N.E.2d 175, 178–179.

"This statutory protection is not diminished where there is neither a current investigation or suspect nor where there has been a passage of time or a lack of follow-up investigation. *Moreland, supra,* 67 Ohio St.3d at 130–131, 616 N.E.2d at 235–236. *A prosecutor's decision to not institute charges against a suspect does not take the investigation record outside the scope of the exception, State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 546 N.E.2d 939, paragraph two of the syllabus, and it is not restricted to only current, uncharged suspects, *Moreland, supra,* 67 Ohio St.3d at 130, 616 N.E.2d at 235–236." (Emphasis added.) *Id.* at 352–353, 638 N.E.2d at 616–617.

Even assuming that the records at issue fall within the scope of the Public Records Act, access to such records may be restricted in accordance with an order of expungement. When a court has complied with all of the procedural requirements for the expungement of a criminal record, the record is no longer available to the general public. See *State ex rel. Beacon Journal v. Radel* (1993), 82 Ohio App.3d 193, 198–200, 611 N.E.2d 520, 523–525. This would include the criminal record in the present case and a criminal record of a criminal that was sealed after acquittal pursuant to R.C. 2953.52.

This section has been construed to include arrest records as documents subject to sealing and therefore removed from public domain. *State v. Grove, supra,* 29 Ohio App.3d at 320, 29 OBR at 420, 505 N.E.2d at 299. Thus, the mere fact that a document may be a public record does not mean that its status cannot be changed upon an otherwise valid order to seal the record.

The court recognizes the need for open, accessible records and the public dissemination of information. This interest, however, must be balanced against the privacy and due process rights of the persons seeking to have the records sealed. It is for this reason, whether pursuant to statute or inherent authority, that the court conducts a public hearing prior to an order to seal a criminal record. By doing so, the court may examine all interests and issues that are raised by the parties in the course of the adversary process.

In the present case, the plaintiff set out the continuing harm from an incident that occurred over twenty-four years ago, that is, a denial of a small-arms permit. The plaintiff has also shown that he does not pose a continuing threat to society. Ironically, if the plaintiff had been charged with a crime and either acquitted or convicted of that crime, he would have met all of the statutory requirements for sealing the record or expunging the conviction. The object of these statutes is to allow a past mistake to be permanently left in the past, when the party has demonstrated that he has learned by this mistake and there is no useful purpose to public dissemination of the criminal record. The same purpose supports the sealing of the record in the present case.

Based upon the evidence presented in this case and the balancing of interests of the parties, the court finds that the plaintiff has satisfied the requirements set out by the Supreme Court in *Pepper Pike, supra,* for sealing his arrest record. The proof of actual harm and the passage of time in this case, as well as the plaintiff's conduct since his arrest, constitute unusual and exceptional circumstances to order the record to be sealed. In reaching this conclusion, the court is not unmindful of the serious nature of criminal drug charges, even on a misdemeanor level. The nature of the charge, in light of the disposition of this particular case and the evidence presented, has been seriously considered, as was done by the Supreme Court in *Pepper Pike, supra.* Accordingly, the plaintiff's claim will be granted.

III. *Remedy*

The final issue to be addressed is the appropriate remedy in this case. While the sealing of the record is based upon the court's inherent authority and not any statutory basis, R.C. 109.60 and 2953.51 provide a procedural framework to follow. Moreover, as the Supreme Court noted in *Pepper Pike, supra,* compliance with the guidelines set out in the criminal expungement statutes results in a

uniform procedure. *Id.*, 66 Ohio St.2d at 378, 20 O.O.3d at 336, 421 N.E.2d at 1306.

With respect to the scope of the remedy, the Supreme Court in *Pepper Pike* held that expungement does not literally obliterate the criminal record. *Id.* at 378, 20 O.O.3d at 336, 421 N.E.2d at 1306. The effect of an order of expungement seals the criminal record from the statutory right of access. This balances the right of the police to maintain basic information regarding this incident, while at the same time restricts dissemination of such information except as provided by statute. By following the statutory guidelines, procedures are incorporated for the custodian of records regarding what information may be retained or disseminated.

In accordance with the provisions of R.C. 109.60, the records of fingerprints and description shall be given to the plaintiff upon his request. In accordance with the provisions of R.C. 2953.53(D), the defendant may maintain a record of the case for the purpose of compiling statistical data only, provided that such record does not contain any reference to the plaintiff. The defendant may also maintain an index of the official sealed record.

In the exercise of this court's authority pursuant to R.C. 1901.13(A)(1) and (B), in order to preserve the effect of this court's order, all other auxiliary records regarding the plaintiff's arrest shall be sealed. Such auxiliary records include witnesses' statements, photographs, negatives and departmental reports. *Pepper Pike, supra*, 66 Ohio St.2d at 378, 20 O.O.3d at 336, 421 N.E.2d at 1306. In addition, to preserve the plaintiff's rights, this order is directed to the Lakewood Chief of Police and the Lakewood Administration, its officers, employees and agents, including, but not limited to members of the Lakewood Police Department and the Lakewood Law Director's Office.

In issuing this order, the court is aware that the order goes beyond the Chief of Police as the custodian of the records. As the court noted in *State v. S.R.* (1992), 63 Ohio St.3d 590, 589 N.E.2d 1319:

"An order to seal an official record applies to every public office or agency that has a record of the case that is the subject of the order, regardless of whether it receives notice of the hearing on the application for the order to seal the official records or receives a copy of the order." *Id.* at 593, 589 N.E.2d at 1322.

The record shows that the law department received notice and attended the hearing in this case. Moreover, the position taken by the law department is aligned with the defendant Chief of Police. The court finds that while there is no prejudice to the law department, the enlargement of the scope of the court order beyond the defendant is necessary to preserve its effectiveness.

The city of Lakewood is restricted from disseminating any information regarding the arrest or investigation of the plaintiff in this case except that which is permitted by and in accordance with the procedures set out in R.C. 2953.53. A copy of this order shall also be sent to all public offices and agencies who may have any record in this case, whether or not it is an official record, that is the subject of this order, informing such office or agency of the sealing of the record, in accordance with the provisions of R.C. 2953.53(A), (B) and (C).

*Judgment accordingly.*